# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

| | |
|---|---|
| **TIMOTHY LAWSON,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.: 4:21-cv-00196-ACA |
| } | |
| **COMMISSIONER,** } | |
| **SOCIAL SECURITY** } | |
| **ADMINISTRATION,** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OPINION

Plaintiff Timothy Lawson appeals the decision of the Commissioner of Social Security denying his claims for a period of disability, disability insurance benefits, and supplemental security income. Based on the court's review of the administrative record and the parties' briefs, the court **WILL AFFIRM** the Commissioner's decision.

## I.   PROCEDURAL HISTORY

In May 2019, Mr. Lawson applied for a period of disability, disability insurance benefits, and supplemental security income, alleging that his disability began on July 4, 2018. (R. at 16, 249–64).[1] The Commissioner initially denied Mr.

---

[1] Mr. Lawson originally alleged that his disability began on June 29, 2018, but he amended his alleged onset date during the administrative hearing. (R. at 16, 38–39)

Lawson's claim and his request for reconsideration (*id.* at 186–96, 201–05), and Mr. Lawson requested a hearing before an Administrative Law Judge ("ALJ") (*id.* at 197). After holding a hearing (r. at 36–78), the ALJ issued an unfavorable decision (*id.* at 13–30). The Appeals Council denied Mr. Lawson's request for review (*id.* at 1–7), making the Commissioner's decision final and ripe for the court's judicial review. *See* 42 U.S.C. §§ 405(g), 1383(c).

## II.   STANDARD OF REVIEW

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The court "must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation marks omitted). "Under the substantial evidence standard, this court will affirm the ALJ's decision if there exists such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quotation marks omitted). The court may not "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Winschel*, 631 F.3d at 1178 (quotation marks omitted). The court must affirm "[e]ven if the evidence preponderates against the Commissioner's findings." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004) (quotation marks omitted).

Despite the deferential standard for review of claims, the court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Henry*, 802 F.3d at 1267 (quotation marks omitted). Moreover, the court must reverse the Commissioner's decision if the ALJ does not apply the correct legal standards. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

### III. ALJ'S DECISION

To determine whether an individual is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

Here, the ALJ determined that Mr. Lawson had not engaged in substantial gainful activity since his July 4, 2018, alleged onset date. (R. at 19). The ALJ found that Mr. Lawson's degenerative disc disease, degenerative joint disease of the left knee, obesity, chronic obstructive pulmonary disease, traumatic brain injury, depression, anxiety, and post-traumatic stress disorder were severe impairments but

3

that his sleep apnea, high blood pressure and cholesterol, type 2 diabetes, allergic rhinitis, and migraine headaches were non-severe impairments. (*Id.*). The ALJ then concluded that Mr. Lawson does not suffer from an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (*Id.* at 19–21).

After considering the evidence of the record, the ALJ determined that Mr. Lawson had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) except that he faced some additional physical, postural, environmental, and mental limitations. (R. at 21). Based on this residual functional capacity, the ALJ found that Mr. Lawson was unable to perform any past relevant work. (*Id.* at 24–25). But based on the testimony of a vocational expert, the ALJ concluded that jobs existed in significant numbers in the national economy that Mr. Lawson could perform, including dowel inspector, ceramic tile examiner, and lens inserter. (*Id.* at 25–26). Accordingly, the ALJ determined that Mr. Lawson had not been under a disability, as defined in the Social Security Act, from his alleged July 4, 2018, onset date through the date of the decision. (R. at 26).

**IV. DISCUSSION**

Mr. Lawson argues that the court should reverse and remand the Commissioner's decision because: (1) the ALJ erred in rejecting the opinion of State

Agency psychiatric consultant Dr. Peter Sims that Mr. Lawson would miss one to two days of work per month; (2) the Appeals Council erroneously failed to consider new evidence; and (3) the ALJ did not properly evaluate Mr. Lawson's subjective pain testimony.  The court examines each issue in turn.

    1.    <u>Dr. Sims' Opinion</u>

Mr. Lawson's first argument is that the ALJ erred in rejecting Dr. Sims' opinion that he would miss one to two days of work per month due to his psychiatric symptoms.  (Doc. 16 at 16–17).

In February 2020, as part of Mr. Lawson's request for reconsideration of his claims at the agency level, Dr. Sims reviewed the evidence in Mr. Lawson's file and found that he could understand, remember, carry out short and simple instructions, and concentrate for two-hour periods on simple tasks with customary breaks and rest during the regular workday.  (R. at 162–63, 181–82).  Dr. Sims also concluded that Mr. Lawson may benefit from a flexible schedule and that Mr. Lawson may miss one to two days of work a month due to his psychiatric signs and symptoms.  (*Id.* at 163, 182).  In addition, Dr. Sims explained that Mr. Lawson's interaction and contact with the public should be casual; that criticism and feedback from supervisors and co-workers should be casual and non-confronting; and that changes in the workplace should be gradually introduced.  (*Id.* at 163–64, 182–83).

In reviewing Dr. Sims' opinion, the ALJ found that the specific findings that were consistent with unskilled work activity were persuasive because they were supported by Mr. Lawson's mental diagnoses and medical history. (R. at 24). However, with respect to Dr. Sims' finding that Mr. Lawson may miss one to two days of work per month, the ALJ explained that "[t]he medical evidence of record does not provide any basis for the prediction of absenteeism, as Mr. Lawson has not had any inpatient psychiatric treatment, emergency room visits for psychiatric issues, or formal mental health treatment." (*Id.*).

Mr. Lawson concedes that he has had no inpatient psychiatric treatment, emergency room visits for psychiatric issues, or formal mental health treatment, but he claims the ALJ improperly rejected Dr. Sims' opinion as to absenteeism because Mr. Lawson was regularly seeing his primary care physician who prescribed him medications for anxiety and depression. (Doc. 16 at 16, citing r. at 410–75).

Between February 2018 and November 2019, Mr. Lawson saw his primary care physician thirteen times for what the physician referred to as visits for general routine care for chronic problems. (R. at 414–75). Mr. Lawson's primary care physician's notes contain no suggestion that his mental impairments would prohibit work one to two days per month or that they would preclude work entirely. (*See generally id.*). To the extent Mr. Lawson claims that he would miss one to two days of work per month for his primary care visits which included receipt of prescriptions

for mental health medications, the overall frequency of the office visits does not support that limitation. Although a handful of the visits occurred monthly (*see* r. at 423, 428, 450, 455, 461), most of the visits occurred approximately every two months (*see id.* at 414, 418, 423, 433, 438, 441, 446, 461, 466, 471). But even if the record demonstrated that Mr. Lawson saw his primary care doctor one or two days a month on a consistent basis (it does not), Mr. Lawson has not cited, and the court has not located, any evidence in the record demonstrating that that level of absenteeism would preclude work or otherwise impact Mr. Lawson's residual functional capacity.

Mr. Lawson also argues that the ALJ's reasons for rejecting Dr. Sims' absenteeism opinion are improper because there was no evidence that he was advised to obtain more formal mental health treatment, and even if there were, the ALJ was required to consider whether Mr. Lawson's mental illness and inability to afford treatment excused his refusal to seek additional treatment. (Doc. 16 at 16–17). This argument misconstrues the basis of the ALJ's decision with respect to Dr. Sims' opinion. The ALJ did not find that Mr. Lawson failed to seek recommended treatment that could have minimized his mental health symptoms; the ALJ found that there was no basis in the record for Dr. Sims' finding that Mr. Lawson's psychiatric symptoms were so severe that he would miss one or two days of work per month. (R. at 24). And because the record contains no evidence that a physician

Case 4:21-cv-00196-ACA   Document 20   Filed 06/29/22   Page 8 of 17

advised Mr. Lawson to obtain additional mental health treatment, the ALJ could not—and did not—draw a negative inference from Mr. Lawson's failure to seek such treatment.  (*See generally id.* at 16–26).

Accordingly, the court finds that the ALJ did not err in rejecting Dr. Sims' opinion that Mr. Lawson may miss one to two days of work per month.

2.  <u>New Evidence Before the Appeals Council</u>

Mr. Lawson's second argument is that the Appeals Council erred when it denied review without considering medical records from Mountain Lakes Behavioral Healthcare, dated August 26, 2020, through September 14, 2020.  (Doc. 16 at 17–19).

"'With a few exceptions, a claimant is allowed to present new evidence at each stage of the administrative process,' including before the Appeals Council." *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1320 (11th Cir. 2015) (quoting *Ingram v. Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007)).  The Appeals Council must review evidence that is new, material, and chronologically relevant.  *Ingram*, 496 F.3d at 1261.  The court reviews *de novo* whether supplemental evidence is new, material, and chronologically relevant.  *Washington*, 806 F.3d at 1321.

While his case was pending before the Appeals Council, Mr. Lawson submitted treatment notes from a mental status examination and accompanying

8

medication records from Mountain Lakes Behavioral Healthcare for the Appeals Council's consideration. (R. at 31–35). The records post-date the ALJ's decision. (*See id.* at 26, 31–35). The Appeals Council explained that the ALJ decided Mr. Lawson's case through August 6, 2020, and that the additional evidence "does not relate to the period at issue," and therefore, "it does not affect the decision about whether" Mr. Lawson was disabled beginning on or before August 6, 2020. (*Id.* at 2).

The Appeals Council did not commit legal error when it refused to consider the treatment and medication records from Mountain Lakes Behavioral Healthcare because the evidence is not chronologically relevant. Evidence is chronologically relevant if it relates to the period on or before of the ALJ's decision. 20 C.F.R. §§ 404.970(a)(5), 416.970(a)(5). A medical evaluation conducted after the ALJ's decision may be chronologically relevant if it pertains to conditions that pre-existed the ALJ's opinion. *Washington*, 806 F.3d at 1322-23 (citing *Boyd v. Heckler*, 704 F.2d 1207, 1211 (11th Cir. 1983)). In *Washington*, a consultative examiner provided an opinion regarding a claimant's mental condition. Although the opinion post-dated the ALJ's decision, the Eleventh Circuit found that the opinion was chronologically relevant because the examiner indicated in his report that he based his opinion on the claimant's reports that "he had experienced hallucinations throughout this life" and on the state of the claimant's cognitive abilities before the

ALJ issued a decision. *Washington*, 806 F.3d at 1322. In addition, the consultative examiner reviewed the claimant's "mental health treatment records from the period before the ALJ's decision reflecting that [the claimant] repeatedly reported experiencing auditory and visual hallucinations." *Id.*

The Mountain Lakes Behavioral Healthcare records are unlike the consultative examiner's report in *Washington*. Mr. Lawson saw a social worker and counselor requesting treatment for bipolar disorder and depression. (R. at 33). Although Mr. Lawson provided subjective reports of his past mental health symptoms, there is no indication that the social worker or counselor reviewed or relied upon medical records from the relevant period in assessing Mr. Lawson's mental condition. (*See id.* at 31–34). Instead, the records show that the social worker and counselor relied on Mr. Lawson's "current symptoms" and found that he "currently meets criteria for diagnosis of Bipolar II disorder." (*Id.* at 33).

Mr. Lawson claims that the records are chronologically relevant because he received a new diagnosis of bipolar disorder and "[i]t is medically unlikely" that he "suddenly developed" bipolar disorder during the twenty days between the ALJ's decision and his intake evaluation at Mountain Lakes Behavioral Healthcare. (Doc. 16 at 19). Mr. Lawson cites no authority for this general proposition, and as explained above, only in limited circumstances—which are not met here—is a medical evaluation that post-dates an ALJ's decision chronologically relevant. *See*

10

*Washington*, 806 F.3d at 1322. Even if the Mountain Lakes Behavioral Healthcare records were chronologically relevant, remand is not required because the records are not material.

Evidence is material if there is a "reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5).[2] Mr. Lawson submits that his new diagnosis of bipolar disorder is material because "bipolar disorder usually indicates a more serious mental impairment than just depression and anxiety," and the new diagnosis conflicts with the ALJ's conclusion that Mr. Lawson has generally demonstrated normal mood and affect without signs of other psychiatric abnormalities and supports his testimony that he has impaired concentration, attention span, persistence, and/or pace. (Doc. 16 at 18). But a diagnosis of bipolar disorder alone is insufficient to demonstrate a reasonable possibility or probability that the ALJ would have reached a different conclusion. The Eleventh Circuit has long recognized that "the mere existence of" an impairment "does not reveal the extent to which" it limits a claimant's ability to

---

[2] Relying on Eleventh Circuit case law interpreting previous versions of the regulations, Mr. Lawson contends that there must be a "'reasonable possibility'" that the new evidence would change the administrative result. (Doc. 16 at 18, quoting *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987)). Mr. Lawson has not argued or shown why the current regulations do not control. However, any distinction between the two standards is one of form over function. On at least one occasion in evaluating a case under the previous version of the regulations, the Eleventh Circuit used the terms "reasonable possibility" and "reasonable probability" interchangeably. *See Washington*, 806 F.3d at 1321–22. This suggests that any difference between the meaning of the two terms is not significant.

11

work. *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005); *see also McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) ("[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality.").

The medical records from Mountain Lakes Behavioral Healthcare do not contain information or statements from a provider about how Mr. Lawson's new bipolar disorder impacted his ability to work during the relevant period. And Mr. Lawson has cited no other evidence demonstrating whether, or to what extent, his bipolar disorder interferes with his ability to perform work-related functions. Accordingly, Mr. Lawson has not shown that his bipolar disorder diagnosis standing alone "rendered the ALJ's decision erroneous." *See Ingram*, 496 F.3d at 1262.

Accordingly, the Appeals Council did not err in failing to consider Mr. Lawson's new evidence.

3. Subjective Pain Testimony

Mr. Lawson's third argument is that the ALJ did not properly evaluate his subjective complaints of pain. (Doc. 16 at 19–22).

Under Eleventh Circuit precedent, a claimant attempting to establish disability through testimony of pain or other subjective symptoms must show evidence of an underlying medical condition and either (1) "objective medical evidence that

confirms the severity of the alleged pain arising from that condition" or (2) "that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation marks omitted). The Commissioner does not dispute that Mr. Lawson presented evidence of various underlying medical conditions or that those conditions cause his alleged symptoms. (*See* doc. 19 at 17–22). Thus, the only question before the court is whether substantial evidence supports the ALJ's determination that Mr. Lawson's "statements concerning the intensity, persistence and limiting effects" of the symptoms "are not entirely consistent with the medical evidence and other evidence in the record." (R. at 22).

"If a claimant testifies as to his subjective complaints of disabling pain and other symptoms . . . , the ALJ must clearly articulate explicit and adequate reasons for discrediting the claimant's allegations of completely disabling symptoms." *Id.* The ALJ need not make "an explicit finding as to credibility, [but] . . . the implication must be obvious to the reviewing court." *Id.* The credibility determination must be sufficient to enable the court "to conclude that [the ALJ] considered [the claimant's] medical condition as a whole." *Dyer*, 395 F.3d at 1210 (first alteration in original) (quotation marks omitted).

Mr. Lawson contends that the ALJ did not properly account for his testimony that he suffers migraine headaches two or three times and a week and must spend a

13

day and a half or two days in a dark room to recover. (Doc. 16 at 20–21). Although the ALJ did not specifically refer to Mr. Lawson's testimony in this regard in his decision, the ALJ did acknowledge that Mr. Lawson's primary care physician diagnosed him with migraines and prescribed medication for the headaches. (R. at 19). Contrary to Mr. Lawson's contention that the ALJ then found that he "does not believe" the migraines impair Mr. Lawson's ability to work (doc. 16 at 21), the ALJ stated that "[t]here is no evidence that" the migraines "cause any significant work-related limitations" (r. 19). And substantial evidence supports that conclusion. Notably, Mr. Lawson's primary care physician's treatment notes do not reflect that Mr. Lawson ever complained of frequent headaches. (*See generally* r. at 410–75). In addition, no provider, including Mr. Lawson's primary care physician, ever explained that Mr. Lawson's migraines impact his ability to work. (*See generally id.*). Therefore, the evidence as a whole does not support Mr. Lawson's testimony about the severity of his migraines, and the ALJ adequately considered the impact of Mr. Lawson's migraines on his residual functional capacity.

    Mr. Lawson next claims that the ALJ did not adequately consider the pain he experienced over "his entire body" after a 2015 car accident. (Doc. 16 at 21). Mr. Lawson testified that when he flipped his truck, "the whole cab of the truck flipped on top" of him (r. at 54), and responders had to cut him out of the vehicle (*id.* at 55). According to Mr. Lawson, "[a] wreck this serious could reasonably produce the

symptoms and chronic pain" he described. (Doc. 16 at 21). Even if true, Mr. Lawson raises no specific alleged error with the ALJ's thorough explanation for why he found Mr. Lawson's allegations about his pain inconsistent with other evidence in the record. (*See* R. at 22–24). Mr. Lawson cites no evidence suggesting that his serious car wreck caused more significant limitations that the ALJ identified in his residual functional capacity. And the ALJ's decision demonstrates that he weighed both Mr. Lawson's testimony and the objective medical evidence and came to a conclusion supported by "such relevant evidence as a reasonable person would accept as adequate" that Mr. Lawson's testimony was not entirely consistent with the objective evidence. *Henry*, 802 F.3d at 1267. This court cannot "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Winschel*, 631 F.3d at 1178 (quotation marks omitted).

Mr. Lawson final argument about his pain testimony is that the ALJ ignored the "severe fatigue" that he suffers because of the "multitude of medications he is taking." (Doc. 16 at 21). Mr. Lawson testified that he takes numerous medications to treat his impairments and that these medications make him drowsy enough to nap for two to three hours every day. (R. at 57–60). The ALJ did not mention this testimony in his decision, but the ALJ did explain that he considered all symptoms and the extent to which those symptoms were consistent with objective medical evidence and other evidence based on the requirements of 20 C.F.R. §§ 404.1529

15

and 416.929 and Social Security Ruling 16-3p. (R. at 21). This statement demonstrates that the ALJ considered and implicitly rejected Mr. Lawson's testimony about the alleged side effects of his medication. *See Robinson v. Comm'r of Soc. Sec.*, 649 F. App'x 799, 802 (11th Cir. 2016)[3] (explaining that ALJ did not fail to consider medication side effects because although the ALJ did not specifically mention them, the ALJ stated that she considered all of claimant's symptoms based on the applicable regulations and Social Security Ruling which instructed the ALJ to evaluate side effects of medication in considering a claimant's subjective testimony). Moreover, substantial evidence supports the ALJ's rejection of Mr. Lawson's testimony about his medication side effects. The record contains no evidence that Mr. Lawson complained about any medication side effects, including severe fatigue, to any medical provider, and no medical provider reported that Mr. Lawson's medication caused any side effects. Therefore, the ALJ did not err in implicitly rejecting Mr. Lawson's testimony about his medication side effects.

## V. CONCLUSION

Substantial evidence supports the ALJ's denial of Mr. Lawson's applications for a period of disability, disability insurance benefits, and supplemental security income, and the court **WILL AFFIRM** the Commissioner's decision.

---

[3] The court cites *Robinson* as persuasive authority. *See McNamara v. Gov't Emps. Ins. Co.*, 30 F.4th 1055, 1060–61 (11th Cir. 2022); *see also* 11th Cir. R. 36-2.

The court will enter a separate final order consistent with this memorandum opinion.

**DONE** and **ORDERED** this June 29, 2022.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE